IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUBICON GLOBAL VENTURES, INC., and Z MOTORS, INC.,

Plaintiffs,

v.

CHONGQING ZONGSHEN GROUP IMPORT/EXPORT CORP., ZONGSHEN INDUSTRIAL GROUP CO LTD,

Defendants.

3:11-CV-712-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

Plaintiffs Rubicon Global Ventures, Inc., and Z Motors, Inc., filed this action against defendants Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd on June 13, 2011. Plaintiffs allege defendants' liability for breach of contract, breach of the implied warranty of merchantability, breach of the implied covenant of good faith and fair dealing, fraud, and misrepresentation. This court has jurisdiction over plaintiffs' action pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy.

On August 8, 2011, defendants filed a notice of appearance in the action. The following day, August 9, 2011, plaintiffs filed a notice of unavailability of counsel, indicating that their sole legal representative would be out of the country and effectively incommunicado from August 24, 2011, through October 5, 2011. On August 11, 2011, plaintiffs moved to stay these proceedings, and on August 12, 2011, while the motion for stay of these proceedings was still pending, defendants moved to dismiss plaintiffs' action pursuant to Federal Civil Procedure Rule 12(b)(6) for failure to state a claim.

Now before the court are plaintiffs' motion (#5) for stay of these proceedings pending the outcome of a related appeal currently pending before the United States Court of Appeals for the Ninth Circuit and plaintiffs' informal, oral motion to defer further proceedings in connection with defendants' motion to dismiss during the period of plaintiffs' counsel's unavailability. I have considered the motions, telephonic oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, plaintiffs' motion (#5) for stay of these proceedings is granted, and plaintiffs' oral motion to defer further proceedings in connection with defendants' motion to dismiss is denied as moot.

## LEGAL STANDARD

"District courts have inherent authority to stay proceedings before them. . . ." *Gates v. Woodford (Rohan ex rel. Gates)*, 334 F.3d 803, 817 (9th Cir. 2003), *citing Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Indeed, the Supreme Court has stated that the courts' inherent discretion to stay proceedings is an important tool in the promotion of judicial economy:

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the

exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis*, 299 U.S. at 254-55.

**FACTUAL BACKGROUND**[1]

On November 30, 2005, the plaintiffs in this action filed a previous action in this court, 05-CV-1809-HA (the "2005 action"), against Zong Shen, Inc., a Florida subsidiary of a Chinese parent corporation that at the time plaintiffs believed was named Zong Shen of China. Plaintiffs alleged the 2005 action defendants' liability in connection with the same claims alleged in the action now before the court.

Counsel for Zong Shen, Inc., initially represented to the court in their answer to plaintiffs' complaint in the 2005 action that they served as counsel for both Zong Shen, Inc., and for Zong Shen of China. On October 5, 2006, by and through a notice of appearance, counsel for Zong Shen, Inc., expressly affirmed to the court that they continued to represent both Zong Shen, Inc., and Zong Shen of China.

Defendants' counsel withdrew from representing both defendants in the 2005 action on January 25, 2007. Judge Haggerty ordered that defendants would identify new counsel within thirty days or their answer would be stricken, and default granted in plaintiffs' favor. On February 26, 2007, defendants having failed to retain new counsel, plaintiffs moved for default judgment, but on March 16, 2007, while the motion for default was still pending, defendants' new counsel filed a notice of appearance, expressly on behalf of both Zong Shen, Inc., and Zong Shen of China. Plaintiffs withdrew their motion for default on March 21, 2007.

---

[1] The following recitation constitutes the court's construal of the evidentiary record for purposes of the motions now before the court only.

On July 21, 2008, defendants in the 2005 action filed a motion for summary judgment. Among the grounds alleged in support of their motion was the assertion that Zong Shen of China was not the correct name of the Chinese corporate parent of Zong Shen, Inc. Defendants asserted that plaintiffs had been advised in "early 2007" that Zong Shen of China was not an existing legal entity, but it does not appear that defendants advised either plaintiffs or the court of the correct name of the intended entity, specifically Chongqing Zongshen Group Import/Export Corp, until they filed their reply memorandum in support of their motion on October 3, 2008.

On October 21, 2008, Judge Haggerty ordered the plaintiffs to amend their complaint in the 2005 action to identify the Chinese parent corporation under its correct corporate name, granting defendants a period of 45 days following the filing date of the amended complaint to "properly serve" defendants with the amended complaint. Judge Haggerty's order specified that plaintiffs' "[f]ailure to comply with []his order in any respect w[ould] result in the dismissal of [the 2005 action] with prejudice.

Plaintiffs amended their complaint in the 2005 action on October 29, 2008, naming as defendants Zong Shen, Inc., and Chongqing Zongshen Group Import/Export Corp (the corporate parent of Zong Shen, Inc., and a defendant in the action now before the court), as well as Zongshen Industrial Group Co Ltd (also a defendant in the action now before the court) and Chongqing Zongshen Group. Plaintiffs served the foreign defendants (Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd.) by substitute process on Zong Shen, Inc. Neither the court nor counsel for Zong Shen, Inc. – who at that time expressly held themselves out as representing all defendants – initially objected to this form of service.

Two days later, on October 31, 2009, Zong Shen, Inc., and, purportedly, Zong Shen of China moved to strike plaintiffs' amended complaint. In connection with the motion to strike, counsel for defendants continued expressly to hold themselves out as representing both defendants. The motion to strike was subsequently granted in part and denied in part.

On December 29, 2008, Zong Shen, Inc., filed an answer to plaintiffs' amended complaint. It was in connection with filing the answer to the amended complaint that counsel for Zong Shen, Inc., first advised the court that they represented only Zong Shen, Inc., and not any foreign corporate defendant. Prior to December 29, 2008, counsel had consistently represented to the court that they represented both Zong Shen, Inc., and its Chinese corporate parent. Counsel never objected to substitute service on the foreign defendants at any time during the period they purported to represent all defendants.

Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd., the foreign corporate defendants, initially made no appearance in the 2005 action. On March 10, 2009, Judge Haggerty entered default against those defendants, and ordered plaintiffs to file a proposed order of judgment. Plaintiffs initially failed to comply with Judge Haggerty's order.

On April 6, 2009, Judge Haggerty granted counsel for Zong Shen, Inc., leave to withdraw from further representation of their client in the 2005 action. That same day, counsel filed notice of withdrawal as counsel for Zong Shen, Inc.

On May 4, 2009, plaintiffs notified the court that they had reached a settlement of their dispute with Zong Shen, Inc. Judge Haggerty entered an order dismissing Zong Shen, Inc., from the 2005 action on June 4, 2009. On July 17, 2009, Judge Haggerty noted plaintiffs' failure to

submit a proposed order of judgment as to defendants Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd as ordered on March 10, 2009, and issued an order to show cause why the action should not be dismissed for failure to prosecute. Default judgment was ultimately entered against defendants Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd on August 12, 2009.

On April 6, 2010, Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd filed a first appearance in the 2005 action, through the same counsel representing the defendants in the action now before the court. On April 9, 2010, Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd moved to set aside the default judgments entered against them. On April 12, 2010, the defendants moved to consolidate the 2005 action with two related cases, 09-CV-818-HA, and 09-CV-1397-BR. On May 4, 2010, Judge Haggerty consolidated the 2005 action with the 09-CV-818-HA action, designating the 2005 action as the lead case.

On June 7, 2010, Judge Haggerty granted the defendants' motion to set aside the default judgments against Chongqing Zongshen Group, Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd in the 2005 action, on the grounds that those defendants had never been properly served under the Hague Service Convention. One week later, on June 14, 2010, those same defendants moved to dismiss plaintiffs' claims against them in the 2005 action, alleging the same grounds in support.

On August 25, 2010, Judge Haggerty granted in part and denied in part the defendants'

motion to dismiss in the 2005 action. In support of his order, Judge Haggerty stated as follows:

> In [the 2005 action], plaintiffs filed the Complaint nearly five years ago and have not yet attempted service on defendants in China. This failure is particularly baffling in light of the fact that defendants expressly suggested service could only be made pursuant to the Hague Service Convention over one year ago. Regardless of whether the 120-day time limit [provided under Federal Civil Procedure Rule 4(m), in connection with service on a domestic defendant] applies here, the court is not without power to control its docket. "[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). No reasonable cause for plaintiffs' failure to attempt foreign service in [the 2005 action] has been shown. Therefore, the court is dismissing that case.

05-1809-HA, Docket No. 324. On the basis of the order dated August 25, 2010, Judge Haggerty issued a judgment dismissing the 2005 action in its entirety "with prejudice" on December 14, 2010.

Plaintiffs appealed Judge Haggerty's dismissal of the 2005 action to the Ninth Circuit on January 13, 2011. That appeal remains pending as of the date hereof.

The action now before the court was filed by plaintiffs against defendants Chongqing Zongshen Group Import/Export Corp. and Zongshen Industrial Group Co Ltd five months later (and within 180 days following final judgment in the 2005 action), on June 13, 2011.

## ANALYSIS

### I. Motion to Stay Further Proceedings in this Action Pending the Outcome of Plaintiffs' Appeal from Judgment in the 2005 Action

Plaintiffs represent to the court that this action was filed pursuant to Or. Rev. Stat. 12.220, Oregon's "savings statute," for the purpose of preserving their causes of action against the defendants from becoming time-barred during the pendency of their appeal from the 2005 action. Section 12.220 provides, in relevant part, as follows:

(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.

(2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute.

Plaintiffs further represent to the court that, in the event either that they prevail in their appeal from judgment in the 2005 action or that the Ninth Circuit remands their action for further proceedings before Judge Haggerty, they will voluntarily dismiss the action now before this court, and that they intend to pursue this action on its merits only in the event that the Ninth Circuit affirms Judge Haggerty's judgment of dismissal. Plaintiffs therefore seek a stay of proceedings in this action pending outcome of the appeal from judgment in the 2005 action. The question presented by plaintiffs' motion for stay of proceedings, therefore, is whether under all of the material circumstances Oregon's savings statute (at least potentially applicable here because this court sits in diversity, and therefore must apply Oregon law to the parties' dispute) could be applied to permit plaintiffs to avoid both otherwise applicable statutes of limitations and the presumptive *res judicata* effect of Judge Haggerty's decision in the 2005 action, and to proceed against the defendants on their claims in this lawsuit.

Section 12.220 permits claimants to file a new action stating the same claims against the

same defendants as in a previously decided action within 180 days of entry of judgment in the previous action, without regard to *res judicata* or otherwise applicable statutes of limitations, where the following requirements are met: (i) the previous action was timely filed, (ii) the previous action was either involuntarily dismissed without prejudice or was involuntarily dismissed with prejudice "on the ground that the plaintiff failed to properly effect service of summons . . . and the statute of limitations for the action expired," and (iii) the defendants had actual notice of the previous action within 60 days following the date it was filed. Here, it is undisputed that the 2005 action was timely filed, that the defendants in this action were named as defendants in the 2005 action, that the claims alleged in this action and the 2005 action are identical, and that the action now before the court was filed within 180 days following entry of judgment in the 2005 action. Moreover, it is undisputed that plaintiffs' claims in the 2005 action were involuntarily dismissed with (rather than without) prejudice. Thus, the savings statute could operate to permit plaintiffs to proceed against defendants on their claims in this action only if the 2005 action was dismissed "on the ground that the plaintiff failed to properly effect service of summons . . . and the statute of limitations for the action expired" and defendants had actual notice of the 2005 action within 60 days after being named as defendants in that action, or on or before December 28, 2008.

In *Ziniker v. Waldo*, Case No. CV-06-1042-ST, 2007 U.S. Dist. LEXIS 8623 (D. Or. Feb. 6, 2007), Judge Stewart thoroughly analyzed the applicability of Oregon's savings clause under similar, if not identical, circumstances. In *Ziniker*, the plaintiff had filed a negligence claim in the United States District Court on a theory of diversity jurisdiction shortly before expiration of the limitations period applicable to the claim under Oregon law. More than 60 but fewer than

120 days later, in the belief that federal law (which provides 120 days for service of process) rather than Oregon law (which provides only 60 days for service of process if service is to relate back to the date the complaint was filed for purposes of the statute of limitations) would control service of process in a federal action. However, where a federal court sits in diversity, service is governed by the law of the court's forum state. The defendant was thus able to obtain summary judgment on the grounds that the plaintiff's action had become time-barred prior to the date the complaint had been served on the defendant. Fewer than 180 days later, the plaintiff filed a second, identical action in the federal court, citing Oregon's savings statute in support of his authority to do so. The *Ziniker* defendant responded by moving for summary judgment in the newly filed action, arguing in support that the action was barred by principals of *res judicata* or, in the alternative, that the savings statute was inapplicable because the previous action was dismissed on statute of limitations grounds and because he had not received actual notice of the original action within sixty days after it was filed.

As to whether Oregon's savings statute operates to create an exception to the *res judicata* doctrine, Judge Stewart noted that, under Federal Civil Procedure Rule 41(b), the dismissal of the original action on statute of limitations grounds would ordinarily be deemed a dismissal with prejudice, and thus a dismissal on the merits, triggering *res judicata*. However, following a close analysis of the legislative history of the 2003 amendments to Section 12.220 that added the "involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired" language to the statute, Judge Stewart persuasively reasoned that the savings statute was intended to create and did create an exception to the *res judicata*

doctrine where applicable. *See Ziniker*, 2007 U.S. Dist. LEXIS 8623 at *15-18.

As to whether the savings statute was applicable to permit the *Ziniker* plaintiff to file his second action, Judge Stewart agreed with the defendant that the plaintiffs first-filed action had been dismissed at summary judgment due to becoming time-barred rather than on the requisite "ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020," but noted that the reason the action became time-barred was clearly the plaintiff's failure to properly effect timely service on the defendant. Reasoning that "[a]ny attempt to differentiate between the two grounds would disregard the reason behind [the] decision [to dismiss the first-filed action at summary judgment] and elevate form over substance," Judge Stewart rejected the defendant's argument that Section 12.220 was inapplicable based on the stated grounds for dismissal of the first-filed action. *See id.* at *18-19.

Turning to the statute's notice provision – which provides that, where the statute of limitations has run on the plaintiff's claims before the second action is filed, the plaintiff may nevertheless timely file the second action where the defendant received "actual notice" of the first action within sixty days after it was filed – Judge Stewart held that the notice requirement was satisfied where the defendant received actual notice of the action against him, without regard to whether notice was received through the channel of attempted service, and without regard to whether the plaintiff intended to effect procedurally compliant service. *See id.* at *23-27. Following extensive review of the evidentiary record before her, Judge Stewart concluded that the *Ziniker* defendant had received actual notice of the first-filed action against him, despite the fact that the plaintiff had not yet by that time attempted to serve him with the complaint or summons. In consequence, Judge Stewart found Section 12.220 applicable on the facts before

her, and allowed the plaintiff's second-filed action to proceed. *See id.* at *32.

I adopt Judge Stewart's persuasive and well-reasoned analysis of the statute. However, as noted above, the facts presented here are not identical, but rather only similar to those presented in *Ziniker*. Whereas in *Ziniker* the first action was timely filed but no attempt was made to effect service during the time required for doing so, with the result that the plaintiff's claims became time-barred, here the plaintiffs attempted in connection with the first action to effect service on the defendants in timely fashion, proceeded with their action against defendants on the assumption that service had been properly effected, and received a default judgment on their claims before the original service was held ineffective and their action dismissed for failure to prosecute. Nevertheless, I find that Judge Stewart's analysis applies with equal force to the facts presented here. In the 2005 action, plaintiffs amended their complaint to name the current defendants for the first time as defendants in the previous action. Shortly thereafter, plaintiffs attempted to serve those defendants by substitute service. The attorneys ostensibly serving as counsel for all defendants in the 2005 action, including at that time the foreign corporate defendants, made no objection at that time to that form of service. The court raised no *sua sponte* objection to that form of service, and granted plaintiffs a default on March 10, 2009. Final default judgment was entered against the defendants August 12, 2009. It was only after the action was reopened in April 2010 and counsel for the defendants moved to set aside the default judgment that any party or the court raised the question whether either service or entry of judgment in plaintiffs' favor had been in any way improper. Moreover, plaintiffs could not have known prior to June 7, 2010, the date the court set aside the default judgments against the defendants, that the court (which had previously at least implicitly approved plaintiffs' chosen

method of effecting service) would agree that service had been inadequately effected. Two and one-half months later, on August 25, 2010, Judge Haggerty dismissed plaintiffs' claims for failure to prosecute them.

Under those circumstances, it is quite clear that plaintiffs' failure to prosecute their claims against the foreign defendants in the 2005 action was the result of plaintiffs' defective service on those defendants. Prior to June 7, 2010, no failure to prosecute would have been discernible from the docket in the 2005 action, in that the court initially accepted plaintiffs' substitute service, plaintiffs moved for default without undue delay, and succeeded in obtaining default judgment from the court; any further effort to prosecute their claims against the foreign defendants would have been superfluous. Only during the ten weeks that elapsed between June 7, 2010 (the date the court set aside plaintiffs' default judgments against the foreign defendants), and August 25, 2010 (the date the court dismissed plaintiffs' claims against the foreign defendants with prejudice) did plaintiffs fail to take any action they had reason to believe was necessary to prosecute their claims. Because ten weeks is patently not an unreasonable amount of time to allow for service, particularly service under the Hague Service Convention (a procedure-intensive process for which no time limit is mandated), it is clear that the court's decision to dismiss plaintiffs' claims for failure to prosecute implicitly related the decision to set aside the default judgments for failure to effect proper service back to the date plaintiffs attempted to effect substitute service. But for the procedural defects in plaintiffs' attempted service on the foreign defendants, plaintiffs' claims would therefore not have been subject to dismissal for failure to prosecute. In consequence, I find that the grounds for which the 2005 action was dismissed do not render Section 12.220 inapplicable to this action.

The issue that remains for resolution by the court is whether the defendants had actual knowledge of the claims alleged against them in the amended complaint in the 2005 action within sixty days after that pleading was filed. In support of their motion, plaintiffs offer the declaration of their counsel, through which plaintiffs purport to offer into evidence proof that Zong Shen, Inc. (apparently a subsidiary of one or more of the defendants), and Yuan Dieux (apparently an affiliate or part-owner of one or more of the defendants) were served with the amended complaint within the requisite time. There are two significant problems with plaintiffs' proffer: first, the described documentary proof is referenced but appears nowhere in plaintiffs' filings, and second, even if it were established that Zong Shen, Inc., and Dieux received actual notice of the amended complaint in the 2005 action within sixty days after it was filed, neither Zong Shen, Inc., nor Dieux is one of the defendants in this action. While it is logically possible that either Zong Shen, Inc., or Dieux might have passed information regarding the amended complaint to one or both of the defendants in this action, the record is devoid of evidence that any such transmission took place.

Because plaintiffs have at most established that Oregon's savings statute *could* apply here, and have failed to establish that the statute is in fact applicable as a matter of law, it is appropriate to consider the potential for harm to defendants in the event the motion for stay is granted versus the potential for harm in the event the motion is denied. If the motion were granted, further proceedings in this action, including further proceedings in connection with defendants' pending motion to dismiss on *res judicata* grounds, would be stayed pending the outcome of plaintiffs' appeal from Judge Haggerty's decision in the 2005 action. In the event the Ninth Circuit ultimately either reversed Judge Haggerty's decision or remanded the action for

further proceedings before Judge Haggerty, plaintiffs would voluntarily dismiss this action without harm accruing to defendants. In the event that Judge Haggerty's decision were affirmed, however, plaintiffs would seek to proceed on their claims in this action. At that time, proceedings would resume in connection with defendants' motion to dismiss, resolution of which would depend in critical part on plaintiffs' ability to establish that the named defendants had received actual notice of the claims set forth in the amended complaint within sixty days after it was filed in the 2005 action. Regardless of whether plaintiffs were able to establish actual notice within the appropriate timeframe, the same outcome would presumptively obtain at that time as would obtain if the court were to entertain defendants' dispositive motion immediately, such that the only possible harm to plaintiffs from granting the motion for stay would be in the form of delay during the pendency of plaintiffs' appeal. By contrast, if the motion for stay were denied, and plaintiffs were able to establish defendants timely actual notice of the amended complaint in the 2005 action, there would thereby be created a very real risk of duplicative actions proceeding in parallel, an outcome to be avoided if possible.

Because the potential for harm in the event of an improvidently denied stay is relatively greater than the potential for harm in the event the stay were improvidently granted, I exercise my inherent discretion to grant plaintiffs' motion for stay. Further proceedings in this action shall be stayed pending the outcome of plaintiffs' appeal from the 2005 action. Counsel for the parties shall notify the court when it becomes appropriate to lift the stay.

## II. Oral Motion to Defer Further Proceedings in Connection with Defendants' Dispositive Motion During the Period of Plaintiffs' Counsel's Unavailability

In light of my disposition of plaintiffs' motion to stay these proceedings pending the

outcome of plaintiffs' appeal from judgment in the 2005 action, plaintiffs' oral motion to defer further proceedings in connection with defendants' dispositive motion during the period of plaintiffs' counsel's unavailability is denied as moot.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#5) for stay of these proceedings pending the outcome of a related appeal is granted, and plaintiffs' informal, oral motion to defer further proceedings in connection with defendants' motion to dismiss until after October 5, 2011, is denied as moot. Further proceedings in this action shall be stayed pending the outcome of plaintiffs' appeal from the 2005 action. Counsel for the parties shall notify the court when it becomes appropriate to lift the stay.

Dated this 30th day of August, 2011.

Honorable Paul Papak
United States Magistrate Judge